## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**FREDRICK J. LOVE, SR.**                                                     **PLAINTIFF**

**v.**                                    **Case No. 4:24-cv-00253 KGB**

**PULASKI COUNTY, ARKANSAS,**
**A Public Body Corporate and Politic**                              **DEFENDANT**

### OPINION AND ORDER

Before the Court is defendant Pulaski County, Arkansas's ("Pulaski County") motion for summary judgment (Dkt. No. 10).  Plaintiff Fredrick J. Love, Sr. responded (Dkt. No. 19).  Pulaski County replied (Dkt. No. 23).  Mr. Love brings this action against Pulaski County, his former employer, pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV; pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*; pursuant to 42 U.S.C. § 1981; and pursuant to the Arkansas Whistle-Blower Act, Ark. Code Ann. § 21-1-601 *et seq.* ("AWBA") (Dkt. No. 1, at 6–13).  Pulaski County moves for summary judgment on all of Mr. Love's claims against it (Dkt. No. 10).  For the following reasons, the Court grants Pulaski County's motion for summary judgment (*Id.*).

### I.    Factual Background

Unless otherwise specified, the Court draws the following facts from Pulaski County's statement of undisputed material facts and Mr. Love's response to the statement (Dkt. Nos. 12; 20).

Mr. Love began working for Pulaski County in 2010 as a Grants Administrator (Dkt. No. 20, ¶ 1).  Five years later, Mr. Love was promoted to the position of Director of Community Services (*Id.*, ¶ 2).  Mr. Love was promoted to that position by County Judge Barry Hyde (*Id.*).

As Director of Community Services, Mr. Love oversaw the functions of the department, which included housing programs, grants, administration of a Brownfields program, and operation of health clinics—as Mr. Love put it, "anything that didn't fit roads and bridges and anything that didn't do with kids pretty much went to [C]ommunity [S]ervices." (*Id.*, ¶ 3).

Pulaski County claims that Mr. Love also supervised as many as 20 to 25 employees during his tenure as Director (*Id.*, ¶ 4). Mr. Love thus had to handle employee complaints and investigate issues that arose with employees (*Id.*). Mr. Love disputes this, with citation to record evidence, and claims that, although Mr. Love supervised 20 to 25 employees, this number increased by 10 to 12 employees when Mr. Love took on the added task of emergency rental assistance during COVID (*Id.*).

Mr. Love was also responsible for monitoring the employees he supervised for fraud, and he was responsible for disciplining employees and reporting any fraud that he uncovered (*Id.*, ¶ 5). As Director, Mr. Love reported directly to Judge Hyde (*Id.*, ¶ 6). One of the employees that Mr. Love supervised was Keya Brooks, who was the Director of Housing (*Id.*, ¶ 7).

Pulaski County claims that, when it discovered that Ms. Brooks tried to bypass a waiting list to place her sister on a County housing assistance program, Judge Hyde directed Mr. Love to terminate Ms. Brooks's employment, which Mr. Love did (*Id.*, ¶ 8). Mr. Love denies this, with citation to record evidence, and claims that Mr. Love spoke with Judge Hyde about some problems that he had encountered within the Housing Department (*Id.*). According to Mr. Love, Mr. Love mentioned that employees were "grumbling" about some things (*Id.*). During their conversation, Judge Hyde asked about Ms. Brooks, and Mr. Love told Judge Hyde who she was (*Id.*). Mr. Love asserts that Judge Hyde then told Mr. Love to "fire her." (*Id.*). Mr. Love further claims that Judge Hyde also told Mr. Love to fire anyone else who was causing any type of discord in the office

(*Id.*).  Mr. Love claims that, as instructed, Mr. Love fired Ms. Brooks and two other employees (*Id.*).

After Ms. Brooks was terminated, Judge Hyde and County Attorney Adam Fogleman were informed that the son of Deputy County Attorney Veletta Smith[1] was on the housing assistance program called Shelter Plus Care (*Id.*, ¶ 9).  Pulaski County claims that Ms. Smith's supervisor, Mr. Fogleman, requested Ms. Smith's resignation because her representation of the County and her son in the same transaction created a conflict of interest (*Id.*, ¶ 10).  Mr. Love denies this, with citation to record evidence, and Mr. Love claims that, when Ms. Brooks was terminated, she told Judge Hyde and Mr. Fogleman that Ms. Smith's son was on the housing program (*Id.*).  Mr. Love further claims that Mr. Fogleman and Mike Hutchens told Mr. Love this information, even though Mr. Love already knew and thought nothing of it (*Id.*).  Mr. Love further claims that this matter was brought up in a Teams meeting with the management team including Judge Hyde; Mr. Love claims that during the meeting, they kept saying the fact that Ms. Smith's son was on the housing program "did not look good." (*Id.*).

Mr. Love says that, on August 8, 2023, he and Mr. Fogleman discussed the Smith matter after a meeting of the Pulaski County Quorum Court (*Id.*, ¶ 11).  Mr. Love claims that Mr. Fogleman said that Mr. Love "should have disclosed that Veletta's son is on the program." (*Id.*, ¶ 12).  In Mr. Love's version of events, Mr. Fogleman concluded the meeting by saying, "I'm going to recommend to the judge that either you resign or you be terminated." (*Id.*).  Mr. Fogleman was not Mr. Love's supervisor and thus could not terminate Mr. Love's employment (*Id.*, ¶ 13).  Mr.

---

[1]  The Court acknowledges that the parties in their filings spell Veletta Smith's name in various ways (Dkt. No. 20, ¶¶ 9, 10, 12, 15, 16).  The Court opts to refer to her as "Veletta Smith" in this Order.

Love reported to Judge Hyde, so only Judge Hyde could terminate Mr. Love's employment (*Id.*, ¶ 14).

Pulaski County claims that Mr. Fogleman did not recommend to Judge Hyde that Mr. Love be terminated or asked to resign or say that Mr. Love did anything wrong (*Id.*, ¶ 15). Pulaski County further maintains that Judge Hyde did not terminate Mr. Love, demand his resignation, or make him choose between those two options (*Id.*, ¶ 16). Mr. Love denies these assertions, and with citation to record evidence, Mr. Love claims that Mr. Fogleman stated that Mr. Fogleman was going to recommend to Judge Hyde that Mr. Love be terminated or resign (*Id.*, ¶¶ 15–16). Mr. Love asserts that, when he offered his letter of resignation to Judge Hyde, Judge Hyde told Mr. Love, "Fred you should have disclosed that V[e]letta's son was on the housing program." (*Id.*). Mr. Love then stated, "So you agree with Mr. Adam that I should resign or be terminated?" Mr. Love claims that Judge Hyde's response was, "Fred, I think it is best." (*Id.*).

According to Pulaski County, Mr. Love voluntarily resigned from his position the day after his meeting with Mr. Fogleman by emailing a letter of resignation to Judge Hyde (*Id.*, ¶ 17). Mr. Love denies this, with citation to record evidence, and claims that he was given the option to resign or be terminated (*Id.*).

Pulaski County claims that Judge Hyde did not want Mr. Love to resign (*Id.*, ¶ 18). After receiving Mr. Love's resignation letter, Judge Hyde requested that Mr. Love meet with him to discuss the matter (*Id.*). Mr. Love denies this, with citation to record evidence, and claims that Judge Hyde told Mr. Love that it was best that he resign (*Id.*).

Pulaski County claims that, at the meeting with Judge Hyde, Mr. Love complained that Mr. Fogleman had said that Mr. Love "could be fired" over the Smith matter and that, because of the conversation with Mr. Fogleman, Mr. Love was resigning from his position (*Id.*, ¶ 19). Mr.

4

Love denies this and, with citation to record evidence, claims that Mr. Fogleman stated that he was going to recommend to Judge Hyde that Mr. Love be terminated or resign (*Id.*).

Pulaski County claims that Judge Hyde told Mr. Love, "You cannot be fired.  You work for me, not for Mr. Fogleman." (*Id.*, ¶ 20).  Mr. Love denies this and, with citation to record evidence, claims that Judge Hyde agreed with Mr. Fogleman that it was best that Mr. Love resign (*Id.*).

Pulaski County claims that Judge Hyde then told Mr. Love that Mr. Love should "calm down," refused to accept Mr. Love's resignation, and advised Mr. Love to "go home and cool off and talk this over with [his] wife" before making a rash decision (*Id.*, ¶ 21).  Mr. Love denies this, and with citation to record evidence, Mr. Love claims that Judge Hyde was upset over the contents of the resignation letter where Mr. Love stated that he did not agree with Mr. Fogleman's assessment of the situation (*Id.*).   Mr. Love further asserts that Judge Hyde tried to get Mr. Love to rewrite the letter because Judge Hyde wanted a better picture painted by Mr. Love (*Id.*). However, according to Mr. Love, he refused to change the wording of the resignation letter (*Id.*). Mr. Love claims that Judge Hyde stated that Judge Hyde would hang on to the letter in hopes that Mr. Love changed the wording (*Id.*).

Pulaski County claims that Judge Hyde did not discuss the merits of the Smith matter with Mr. Love:  "What the issue was at the moment for me is that Mr. Love is trying to resign from his job, and I didn't want him to resign.  And I told him I didn't want him to resign.  And I told him I wouldn't let him resign that day." (*Id.*, ¶ 22).  Mr. Love denies this, and with citation to record evidence, Mr. Love claims that Judge Hyde stated that it was best for Mr. Love to resign (*Id.*). According to Mr. Love, Judge Hyde stated that the matter involving Veletta Smith "really stinks, and it is not right." (*Id.*).

On December 22, 2023, Mr. Love submitted a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC") (*Id.*, ¶ 23).  The charge asserted discrimination based on "Race, Retaliation, Sex." (*Id.*).   The charge of discrimination stated the following particulars:

> I was hired in March 2010 and was employed most recently as the Director of Community Services.  While employed I have been subjected to multiple internal investigations, and while cleared of any wrongdoing, in 2021 I complained to the county judge that the constant investigations amounted to harassment and discrimination, as other white male comparators actually committed sexual harassment and were never investigated.  On or about August 8, 2023, the County Attorney told me that the issue with the Deputy County Attorney's request for accommodation for her son, did not look good and I should have known to disclose this issue.  He stated he was going to recommend to the Judge the same option be provided to me as the Deputy County Attorney, which was to resign or be terminated.  I felt I had no other option but to resign and therefore I was constructively discharged.
>
> There were two instances in which Ronnie Routh, the Director of Juvenile Detention was provided administrative leave while under investigation, while I was not afforded the same.  In addition, there was a press release of the issue with the Housing Agency, yet there was no press release done of any of the previous issues, including that of the sexual misconduct of Ronnie Routh.
>
> I believe the above happened to me because of my race, Black, sex, Male, and in retaliation for complaining about race and gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*, ¶ 24).  Mr. Love's charge of discrimination did not assert a claim of pay discrimination (*Id.*, ¶ 25).

Pulaski County claims that, on December 26, 2023, the EEOC issued a determination and notice of rights stating that it would not proceed further with Mr. Love's claims (*Id.*, ¶ 26).  Mr. Love denies this, and Mr. Love claims that the EEOC issued a Determination and Notice of Rights Letter that states the following:

> The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute.  This does not mean the claims have no merit.  This determination does not

certify that the respondent is in compliance with the statutes.  The EEOC makes no findings as to the merits of any other issues that might be construed as having been raised by this charge.

(*Id.*).

As mentioned in his EEOC charge of discrimination, Mr. Love claims that Ronnie Routh, a white man, received favorable treatment from Pulaski County (*Id.*, ¶ 27).  Mr. Routh was the Director of the Pulaski County Juvenile Detention Center (*Id.*, ¶ 28).  On July 25, 2022, Judge Hyde received an email from an Arkansas State Police child abuse investigator reporting that Mr. Routh had been accused of sexually abusing juveniles at the Detention Center (*Id.*, ¶ 29).  When Judge Hyde received that email, he removed Mr. Routh from the Detention Center and placed him on administrative leave with pay (*Id.*).

Pulaski County claims that Judge Hyde's treatment of Mr. Routh after learning about the investigation aligned with County policy, which establishes that an accusation of a crime leads to an employee's removal from the employee's position until completion of the investigation (*Id.*, ¶ 30).  According to Mr. Love, Pulaski County's disciplinary policy states that "[a]ll employees found to have violated any part of this policy shall be immediately subject to disciplinary action, up to and including termination." (*Id.*).  The County's personnel policy further states:

> A.  Inappropriate Conduct, Hiring officials and supervisors are expected to orient and train employees in concepts and responsibilities of public service.
>
> . . .
>
> • Any other acts of an employee or the employee's failure to act in a responsible, reasonable manner, which reflect upon the employee's fitness for the job and/or which adversely affect the County or the County's

reputation.

(*Id.*).  Mr. Love claims that there is nothing in Pulaski County's policy that states that a person being accused of a crime should result in the removal of the employee until the investigation is completed (*Id.*).

Pulaski County maintains that, under that policy, if an employee is charged with a crime, the employee is terminated from the employee's position with Pulaski County (*Id.*, ¶ 31).  Mr. Love denies this, and Mr. Love claims that Pulaski County does not have such a policy (*Id.*).

Mr. Routh ultimately resigned from his position in January 2023 shortly before charges were filed against him (*Id.*, ¶ 32).  Mr. Love claims that he received different treatment than Mr. Routh because Mr. Routh received paid administrative leave during the investigation, but Mr. Love was not accused of sexual assault of detained juveniles (*Id.*, ¶ 33).

Mr. Love also claims that Mr. Hutchens, a white man, received favorable treatment from Pulaski County (*Id.*, ¶ 34).  Mr. Hutchens is the Comptroller for Pulaski County, a job in which he handles the County's fiscal responsibilities (*Id.*, ¶ 35).  Most of the Pulaski County department heads report to Mr. Hutchens (*Id.*).  According to Mr. Love, Mr. Hutchens received favorable treatment when Mr. Hutchens had an extramarital affair with—and later married—an employee who reported to him (*Id.*, ¶ 36).

Pulaski County claims that Mr. Love believed that Mr. Hutchens's relationship breached "office policy" and was not investigated (*Id.*, ¶ 37).  Mr. Love does not actually know if Mr. Hutchens's relationship was the subject of any complaint that could have been investigated (*Id.*).  Pulaski County further claims that Mr. Love did not have an affair with an employee and later

marry her (*Id.*).  Mr. Love denies this and claims that Mr. Hutchens had an affair with his subordinate and was not investigated for his conduct (*Id.*).

Mr. Love also claims that Mr. Fogleman, the County Attorney who is a white man, received favorable treatment from the County over a disclosure issue related to his business (*Id.*, ¶ 38). Pulaski County maintains that Mr. Love does not know if Mr. Fogleman disclosed his interest in the property, saying that he was not aware of a disclosure (*Id.*).  Mr. Love denies this, and with citation to record evidence, Mr. Love claims that during a meeting with Mr. Fogleman, Mr. Hutchens, and Mr. Love, which was after the Smith matter supposedly came to light, Mr. Fogleman told Mr. Hutchens that Mr. Fogleman might have a conflict because Mr. Fogleman had received money from the Brownsfield Grant (*Id.*).

Pulaski County claims that Mr. Fogleman disclosed his interest in the business and the grant application to Judge Hyde, who believed that the application was "fully legal" and did not create a conflict of interest (*Id.*, ¶ 39).  Mr. Love denies this, and Mr. Love claims that Mr. Fogleman did not disclose this; according to Mr. Love, this matter was disclosed after the Smith matter came to light (*Id.*).

Mr. Love claims that Chastity Scifres, a white woman who is Pulaski County's Director of Human Resources, received favorable treatment from the County over an alleged violation of the Family and Medical Leave Act ("FMLA") (*Id.*, ¶ 40).  Ms. Scifres reports to Mr. Hutchens, not Judge Hyde (*Id.*, ¶ 41).  Pulaski County claims that Judge Hyde discussed the FMLA matter with Mr. Fogleman and with the insurance company that defended the lawsuit, concluding from those discussions that Ms. Scifres did nothing wrong (*Id.*, ¶ 42).  Mr. Love denies this and claims that his counsel represented Sonjia Persons in a lawsuit against Pulaski County alleging discrimination based on race and violation of the FMLA (*Id.*).  According to Mr. Love, Ms. Persons was

terminated just after taking FMLA leave by Ms. Scifres (*Id.*).  The parties later settled this case for $325,000.00 (*Id.*).

Pulaski County claims that Mr. Love's evidence that he was similarly situated to Mr. Routh, Mr. Hutchens, Mr. Fogleman, and Ms. Scifres consists entirely of a claim that they "were all on the same management team." (*Id.*, ¶ 43).  Mr. Love denies this and claims that these individuals report to Judge Hyde (*Id.*).

Mr. Love's FMLA claim was denied in January 2021 (*Id.*, ¶ 44).  Pulaski County claims that Mr. Love did not make his complaint to Judge Hyde about Ms. Scifres until June 2021 (*Id.*). By that time, the FMLA issue had been resolved, with Ms. Scifres telling Mr. Love that the denial of leave was a mistake for which she apologized (*Id.*).  Mr. Love denies this and claims that, when his claim was denied, he complained to Judge Hyde about the matter (*Id.*).

Mr. Love does not claim that he was "asked to resign" until August 2023, more than two years after complaining to Judge Hyde about Ms. Scifres (*Id.*, ¶ 45).  Mr. Love said that, when he did not receive a raise, he spoke to Judge Hyde about the issue, and Judge Hyde gave him a raise (*Id.*, ¶ 46).  While the other employees on whom Mr. Love bases his pay discrimination claim were "Directors," their jobs differed from Mr. Love's (*Id.*, ¶ 47).

Mr. Love admits this and adds that the following individuals were direct reports to Judge Hyde:

> (a) Mike "Hutch" Hutchens – Director of Administrative Services
>
> (b) Cozetta Jones – Communications
>
> (c) Fredrick Love – Director of Community Services
>
> (d) Gerone Hobbs – Chief Coroner
>
> (e) Adam Fogleman – County Attorney

(f) Ronald Routh– Director of Juvenile Detention[2]

(g) Jamie Scott – Director of Youth Services

(*Id.*).

Mr. Hutchens is the Comptroller, a job in which he actually supervises most of the County's department heads (*Id.*, ¶ 48). Mr. Fogleman is the County Attorney (*Id.*, ¶ 49). Mr. Love identified "Steve" as Director of Public Works, a different job than what Mr. Love held (*Id.*, ¶ 50). Mr. Love testified that he knew about the alleged discriminatory pay classifications as early as 2017 (*Id.*, ¶ 51).

Mr. Love claims that he reported "potential fraud" in the housing program that he oversaw (*Id.*, ¶ 52). In his role as Director of Community Services overseeing that program, Mr. Love was ultimately responsible for what occurred under his watch and to supervise and, if necessary, discipline his employees working on the program (*Id.*). It was also Mr. Love's job to report fraud in his department (*Id.*, ¶ 53). Mr. Love says that he reported the potential fraud to Ms. Smith, who was the housing attorney at the time (*Id.*, ¶ 54).

Mr. Love learned about the matter from Hollie Roy, who came to him after Ms. Brooks was fired (*Id.*, ¶ 55). According to Mr. Love, Ms. Brooks reported Ms. Smith's issue with her son being on the program to Judge Hyde after Mr. Love terminated Ms. Brooks's employment (*Id.*, ¶ 56). Mr. Love reported the matter to the Department of Housing and Urban Development ("HUD") and to the Pulaski County prosecuting attorney (*Id.*, ¶ 57). Judge Hyde also reported the

---

[2] In their briefing, the parties identify Ronnie Rought as the Director of Juvenile Detention (Dkt. No. 20, ¶ 47). However, the Court understands this to be a typographical error, and the Court understands the parties refer to Ronnie Routh, who served as Director of Juvenile Detention and is referenced elsewhere in the record (*See id.*, ¶¶ 24; 27–33).

potential fraud to law enforcement (*Id.*, ¶ 58). Mr. Love's evidence that the County terminated his employment because he reported the fraud "is that I got discharged from my duties." (*Id.*, ¶ 59).

## II.    Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56). Summary judgment is proper if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the non-moving party to establish that

there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

## III.    Analysis

### A.    Race Discrimination Claim[3]

#### 1.    *Prima Facie* Case Of Discrimination

When there is no direct evidence of race discrimination, the Court applies the burden-shifting analysis from *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Garcia v. Primary Health Care, Inc.*, 604 F. Supp. 3d 765, 774 (S.D. Iowa 2022) (quoting *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014)). Once the defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to the

---

[3] The Court analyzes Title VII, § 1981, and § 1983 race discrimination claims under the same framework. *Chism v. Curtner*, 619 F.3d 979, 983 (8th Cir. 2010), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011); *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 n.3 (8th Cir. 2009).

42 U.S.C. § 1981 provides persons with the equal right to make and enforce contracts. *Harris v. Hays,* 452 F.3d 714, 717 (8th Cir. 2006). A claim against a state actor under § 1981 must be asserted through 42 U.S.C. § 1983. *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998). While municipalities may also be sued as "persons" under § 1983, they may not be held liable pursuant to a theory of respondeat superior. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994). Instead, municipal liability arises only if there is an official municipality policy or custom underlying the injury. *Miller v. Compton*, 122 F.3d 1094, 1099 (8th Cir. 1997). A single act of a policy maker may suffice to establish such a policy, but "that act must come from one in an authoritative policy making position and represent the official policy of the municipality." *Id.* at 1100.

plaintiff to show "that the employer's proffered reason is merely a pretext for intentional discrimination." *Id.* (quoting *Prod. Fabricators*, 763 F.3d at 969).

To establish a *prima facie* race discrimination claim, a plaintiff must show: "(1) that plaintiff is a member of a protected class; (2) that plaintiff met the employer's legitimate expectations; (3) that plaintiff suffered an adverse employment action; and (4) that the circumstances give rise to an inference of discrimination." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121 (8th Cir. 2017) (quoting *Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 958 (8th Cir. 2015)).

The parties do not appear to dispute the first prong of the *prima facie* race discrimination analysis—that Mr. Love is a member of a protected class (*See* Dkt. No. 11, at 12–18). At issue in this matter is whether Mr. Love suffered an adverse employment action. In determining whether an employment action was "adverse," courts must look to whether the plaintiff has suffered "some harm respecting an identifiable term or condition of employment." *Cole v. Group Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (quoting *Muldrow v. City of St. Louis,* 601 U.S. 346, 355 (2024)).

"[C]ircumstances amounting to a constructive discharge" are adverse employment actions. *In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018). To prove constructive discharge, the plaintiff must prove that: (1) "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign," and (2) "he actually resigned." *Norgren v. Minn. Dep't of Hum. Servs.*, 96 F.4th 1048, 1056 (8th Cir. 2024) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)). In other words, a plaintiff-employee must prove that the employer "deliberately creat[ed] intolerable working conditions with the intention of forcing [him] to quit and that a reasonable person in [his] situation would find the working conditions intolerable.

Thus, the intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings." *Willis v. Henderson*, 262 F.3d 801, 810 (8th Cir. 2001) (quoting *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1247 (8th Cir. 1998)).  "The plaintiff can satisfy the intent requirement by demonstrating that he quit as a reasonably foreseeable consequence of the employer's discriminatory actions." *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) (*quoting Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Loc. No. 101*, 3 F.3d 281, 285 (8th Cir. 1993)).  "To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly." *Id.* (citing *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir.1995)).  "An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Id.*

Pulaski County claims that Mr. Love did not suffer an adverse employment action because Mr. Love resigned voluntarily (Dkt. No. 11, at 13).  Mr. Love maintains that he was forced to resign, amounting to being constructively discharged (Dkt. No. 21, at 41).

Mr. Love asserts that, on August 8, 2023, he and Mr. Fogleman discussed the Smith matter after a meeting of the Pulaski County Quorum Court (Dkt. No. 20, ¶ 11).  Mr. Love claims that Mr. Fogleman said that Mr. Love "should have disclosed that Veletta's son is on the program." (*Id.*, ¶ 12).  If the Court accepts as true non-moving party Mr. Love's version of events, as the Court must at this stage, Mr. Fogleman concluded the meeting by saying, "I'm going to recommend to the judge that either you resign or you be terminated." (*Id.*).  Given that all parties admit that Mr. Fogleman was not Mr. Love's supervisor and thus did not have the authority to terminate him, Mr. Fogleman's comment is insufficient to establish constructive discharge (*Id.*, ¶ 13).  *See Norgren,* 96 F.4th at 1056.

Further, undisputed record evidence reflects that, the day after Mr. Fogleman and Mr. Love discussed the Smith matter, around 8:00 a.m. on August 9, 2023, Mr. Love sent his resignation letter to Judge Hyde via email informing Judge Hyde that Mr. Love would be resigning effective on August 23, 2023 (Dkt. Nos. 10-3, at 1; 10-1, at 23–24).  In the letter, Mr. Love communicated to Judge Hyde that Mr. Love did not believe that there had been a conflict of interest, and if Mr. Love had, Mr. Love would have disclosed it (Dkt. No. 10-3, at 1).

It also is undisputed that, around 1:00 p.m. on the afternoon of August 9, 2023, after Mr. Love had sent his resignation letter to Judge Hyde, Mr. Love met with Judge Hyde to discuss his resignation (Dkt. No. 10-1, at 23–24).  The Court acknowledges that what occurred during Judge Hyde and Mr. Love's meeting is disputed by the parties.  Pulaski County claims that Judge Hyde did not want Mr. Love to resign (Dkt. No. 20, ¶ 18).  Mr. Love denies this, with citation to record evidence, and claims that Judge Hyde told Mr. Love that it was best that Mr. Love resign (*Id.*).

However, by the time of this meeting, it is undisputed that Mr. Love had already tendered his resignation to Judge Hyde (Dkt. Nos. 10-3, at 1; 10-1, at 23–24).  Mr. Love did so before even speaking with his supervisor, Judge Hyde, and before Mr. Love even claims that Judge Hyde first asked that Mr. Love resign (*See* Dkt. No. 20, ¶ 18).  Mr. Love tendered his resignation the morning after Mr. Fogleman said that Mr. Fogleman was going to recommend to Judge Hyde that Mr. Love resign or be terminated; however, all parties agree that Mr. Love reported to Judge Hyde, so only Judge Hyde could terminate Mr. Love's employment (*Id.*, ¶ 14).

Given that the undisputed record evidence with all reasonable inferences construed in favor of Mr. Love establishes that Mr. Love resigned after a conversation with an employee who was not his supervisor and that, based on the timing of his resignation, Mr. Love did not give Judge Hyde the opportunity to work out the perceived issues before resigning, this Court determines that

no reasonable juror could conclude that Mr. Love was constructively discharged.  *See Tidwell*, 93 F.3d at 494.  For these reasons, the Court also determines that the undisputed record evidence with all reasonable inferences construed in favor of Mr. Love establishes that no reasonable juror could conclude that Mr. Love suffered an adverse employment action.

Even if Mr. Love could establish that he suffered an adverse employment action, Mr. Love still fails to establish a *prima facie* case of race discrimination because the circumstances surrounding Mr. Love's resignation do not support an inference of discrimination.  *See Edwards*, 860 F.3d at 1121 (quoting *Huynh,* 794 F.3d at 958).

Here, Mr. Love brings his race discrimination claim under a disparate treatment theory (Dkt. No. 1, ¶¶ 36–40).  To establish a *prima facie* case of race discrimination under this theory, Mr. Love must provide "specific, tangible evidence of at least one other employee who was similarly situated in all relevant respects, including committing offenses of the same or comparable seriousness."  *Said v. Mayo Clinic*, 44 F.4th 1142, 1148 (8th Cir. 2022) (quoting *Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 730 (8th Cir. 2019); *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 879 (8th Cir. 2014)).

Mr. Love identifies the following white individuals as comparators:  Ronnie Routh; Mike Hutchens; Adam Fogleman; and Chastity Scifres (Dkt. No. 21, at 23).  Mr. Routh, a white male, was the Director of Juvenile Detention (*Id.*).  Mr. Routh was accused of sexual assault and harassment of juveniles at the detention facility, and he was placed on administrative leave with pay (*Id.*).  Mr. Love claims that despite the "really bad look for the county, Mr. Routh was not told that he needed to either resign or be terminated."  (*Id.*, at 25).  However, Mr. Routh is not similarly situated to Mr. Love.  Mr. Routh had a different position and allegedly committed an offense that is entirely different from Mr. Love's purported conduct.  *See Said*, 44 F.4th at 1148–49 (finding

that an employee who was accused of sexual harassment and making unwelcomed romantic advancements was not similarly situated to an employee accused of disrespectful, unethical, and inappropriate behavior).  Although the alleged misconduct of comparators need only be of "'comparable seriousness' and not the 'exact same offense,'" *Said* 44 F.4th at 1148–49 (quoting *McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 600 (8th Cir. 2020)), a court does not have "the authority to sit as [a] super-personnel department[ ] reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."  *Id.* (alterations in original) (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)).

Mr. Hutchens, a white male, is the Director for Administrative Services/Chief of Staff (Dkt. No. 21, at 27).  Mr. Love contends that Mr. Hutchens engaged in an extramarital affair with his subordinate and fellow County employee, Erica Johnson (*Id.*).  Mr. Love asserts that, despite this, no disciplinary action was taken against Mr. Hutchens (*Id.*).  Here too, Mr. Love and Mr. Hutchens are not similarly situated because their alleged conduct is not the same.  *See Said,* 44 F.4th at 1148–49.

Mr. Love claims that he is similarly situated to Mr. Fogleman who Mr. Love claims received favorable treatment because Mr. Fogleman was not punished for failing to disclose his interest in a company that applied for a County grant (Dkt. No, 21, at 28–29).  However, the record reflects that Mr. Fogleman disclosed his interest in the company and disclosed the fact that the company applied for the County grant to Judge Hyde (Dkt. No. 10-2, at 12–14).  Judge Hyde represented that "[i]t was a fully legal application" and that he was not concerned that there might be any type of conflict of interest (*Id.*, at 12–13).  The Court acknowledges that Mr. Love in his deposition claims that he was not aware if Mr. Fogleman's interest was disclosed "at that time"

(Dkt. No. 10-1, at 37–38). This is insufficient record evidence to meet proof with proof at this stage of the litigation and to deny Judge Hyde's testimony. Given that Judge Hyde maintains that Mr. Fogleman disclosed his interest in a company that had a potential conflict of interest with the County and that Judge Hyde confirmed there was not a conflict of interest in regard to Mr. Fogleman's situation, the record evidence does not support that Mr. Fogleman is similarly situated to Mr. Love.

Mr. Love also points to Ms. Scifres, a white female, as a comparator (Dkt. No. 21, at 30). Ms. Scifres was the Director of Human Resources, and Mr. Love claims that Ms. Scifres terminated an African American employee who had taken leave pursuant to the FMLA (*Id.*). Mr. Love represents that the terminated employee sued the County, and the parties settled the lawsuit (*Id.*). Mr. Love claims that, despite the lawsuit as a result of Ms. Scifres' actions, the County took no action against Ms. Scifres (*Id.*). The record evidence demonstrates that Ms. Scifres' conduct is not similar to Mr. Love's; further, Ms. Scifres did not have the same supervisor as Mr. Love (Dkt. No. 21-2, at 4–5). Therefore, Mr. Love is not similarly situated to Ms. Scifres.

Given the undisputed record evidence, even with all reasonable inferences drawn in favor of Mr. Love, the Court determines that no reasonable juror could conclude that Mr. Love is similarly situated to any of the individuals he identifies as comparators.

For the foregoing reasons, the Court determines that Mr. Love fails to establish a *prima facie* case of race discrimination and that Pulaski County is entitled to the entry of summary judgment in its favor on Mr. Love's race discrimination claim.

### 2.    Legitimate Nondiscriminatory Reason For Resignation And Failure To Establish Pretext

Even assuming *arguendo* that Mr. Love could establish a *prima facie* case of race discrimination, Pulaski County has alleged a legitimate, nondiscriminatory reason for Mr. Love's

resignation, and Mr. Love has not demonstrated that the stated reason was pretext for intentional race discrimination. Pulaski County takes the position that the incident giving rise to Mr. Fogleman stating that he would recommend that Mr. Love be fired or resign is the conflict of interest that another employee, Ms. Smith, caused by representing both the County and her son (Dkt. No. 20, ¶¶ 11–12). Mr. Love admits that he was aware of Ms. Smith's actions but maintains that he did not believe that there was a conflict of interest (*Id.*, ¶ 10). The Court finds that Pulaski County has alleged a legitimate, nondiscriminatory reason for Mr. Love's resignation.

Having established that Pulaski County alleged a legitimate, nondiscriminatory reason for Mr. Love's resignation, the burden shifts back to Mr. Love to establish that Pulaski County's legitimate, nondiscriminatory reason is pretext for intentional discrimination. *See McDonnell Douglas Corp.,* 411 U.S. at 804. A plaintiff may show pretext by establishing that an employer treated similarly situated employees disparately. *Nelson v. Lake Elmo Bank*, 75 F.4th 932, 940 (8th Cir. 2023) (quoting *Lake*, 596 F.3d at 874). Establishing that other employees are "similarly situated in all relevant respects" is "a *rigorous* standard at the pretext stage." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1051 (8th Cir. 2011) (emphasis added) (internal quotation marks omitted) (citing *King v. Hardesty*, 517 F.3d 1049 (8th Cir. 2008), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)). "[I]ndividuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.*" Nelson*, 75 F.4th at 940 (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)).

Against the even more demanding standard at this stage of the *McDonnell Douglas* analysis, for the reasons outlined in the *prima facie* race discrimination discussion, Mr. Love fails

to meet his burden to establish that he was similarly situated to other employees outside the protected class who he claims were treated differently than Mr. Love.

For these reasons, the Court finds that, even if Mr. Love has made out a *prima facie* case of racial discrimination, his race discrimination claim fails. The Court thus grants summary judgment to Pulaski County on Mr. Love's racial discrimination claim.[4]

### B.    Retaliation Claim[5]

Mr. Love claims that he was retaliated against after he filed a complaint of discrimination with Judge Hyde, claiming that Mr. Love was a victim of discrimination due to Ms. Scifres launching baseless investigations against him (Dkt. No. 1, ¶ 89). Mr. Love also claims that, after Mr. Love lodged the complaint with Judge Hyde about the baseless investigations, Ms. Scifres denied Mr. Love's request to take FMLA leave after he and his wife adopted a baby in January 2021 (*Id.*, ¶ 91). Mr. Love further contends that, after he lodged his complaint against Ms. Scifres, Mr. Love was given the ultimatum to resign or be terminated (*Id.*, ¶ 92). Pulaski County claims that Mr. Love cannot establish a *prima facie* case of retaliation because Mr. Love did not suffer an

---

[4] Mr. Love does not bring a separate sex discrimination claim (*See* Dkt. No. 1, ¶¶ 36–103). However, Mr. Love claims that he has been subjected to unlawful employment practices "on account of his race, sex, and in retaliation for having opposed discriminatory practices." (*Id.*, at 1). Therefore, even if the Court were to construe his complaint to allege a sex discrimination claim, such a claim would fail for the same reasons that Mr. Love's race discrimination claim fails. *See Parker v. United States Dep't of Agric.*, 129 F.4th 1104, 1111–12 (8th Cir. 2025) (applying the same *prima facie* standard to Title VII race and sex discrimination claims)).

[5] The Court applies the same analysis to claims of retaliation under Title VII and 42 U.S.C. § 1981. *Takele v. Mayo Clinic,* 576 F.3d 834, 838 (8th Cir. 2009) (citing *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 n. 3 (8th Cir. 2008); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997)). Claims brought against county defendants pursuant to 42 U.S.C. § 1983 based upon the First Amendment as applied through the Fourteenth Amendment shield public employees from retaliation and apply essentially the same standard as that applied to claims of retaliation under Title VII and 42 U.S.C. § 1981. *See Butler v. Crittenden Cnty.*, 708 F.3d 1044, 1050–51 (8th Cir. 2013) (citing *Takele*, 576 F.3d at 839; *Davison v. City of Minneapolis*, 490 F.3d 648, 655 (8th Cir. 2007)).

adverse employment action and because Mr. Love fails to establish a causal link between the protected conduct and the alleged adverse employment action (Dkt. No. 11, at 20–21).

### 1.    *Prima Facie* **Case Of Retaliation**

To establish a retaliation claim, a plaintiff must show that:  (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection in engaging in a protected activity and the adverse employment action.  *Warren v. Kemp*, 79 F.4th 967, 973 (8th Cir. 2023) (citing *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016); *Kim*, 123 F.3d at 1063).  Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show a nondiscriminatory reason for the adverse employment action.  *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 985 (8th Cir. 2011); *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).  If the defendant does so, the plaintiff can still prevail on a final step of the *McDonnell Douglas* analysis by proving, by a preponderance of the evidence, that the reasons proffered by the employer are pretext.  *Tyler*, 628 F.3d at 987–89; *Richmond v. Bd. of Regents of Univ. of Minn.,* 957 F.2d 595, 598 (8th Cir. 1992).

Here, Pulaski County claims that Mr. Love did not suffer an adverse employment action and that Mr. Love cannot show that the adverse employment action was causally linked to the protected conduct in which he engaged (Dkt. No. 11, at 19–20).  The same standard for "adverse employment actions" applies to retaliation and race discrimination claims.  *See Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1052–53 (8th Cir. 2024).  Therefore, for the reasons stated above, the Court finds that based on the undisputed record evidence, even with all reasonable inferences construed in favor of Mr. Love, Mr. Love did not suffer an adverse employment action (*See* Dkt. Nos. 10-3, at 1; 10-1, at 23–24).

Further, even if Mr. Love could establish an adverse employment action, Pulaski County claims that Mr. Love fails to establish a causal link between the protected conduct and alleged adverse employment action because Mr. Love offers no proof that Ms. Scifres played any role in Mr. Love being told that he had to resign or that he would be terminated (Dkt. No. 11, at 20). Mr. Love contends that he filed a complaint with Judge Hyde alleging that Mr. Love was the victim of race discrimination due to the constant investigations to which Mr. Love was subjected (Dkt. No. 21, at 38). The undisputed record evidence reflects that Mr. Love filed his complaint against Ms. Scifres based on what he contends were constant investigation in June 2021 (Dkt. No. 10-1, at 47). Two years after lodging his complaint based on the alleged conduct of Ms. Scifres, Mr. Love claims that he was given the ultimatum to resign or be fired (Dkt. No. 1, ¶¶ 89–92).

Two investigations were spearheaded by Ms. Scifres, and they included: (1) an investigation involving Mr. Love's brother-in-law getting a contract and (2) an investigation after Mr. Love was accused of age discrimination (Dkt. No. 21, at 37–38). A third investigation was conducted by Carolyn Witherspoon (*Id.*, at 37). After the investigations concluded, Mr. Love was not found to have engaged in any wrongdoing (*Id.*, at 38).

To establish a causal link, Mr. Love "must prove that [his] opposition to unlawful discrimination was the 'but for' cause of the employer's adverse action." *Schottel v. Nebraska State Coll. Sys.*, 42 F.4th 976, 983 (8th Cir. 2022) (quoting *Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011)). In support of this claim of a causal link, Mr. Love points to his claims that he was treated differently than other employees (*Id.*). However, Mr. Love's claims that he was treated differently than similarly situated employees outside the protected class fail on the undisputed record evidence, even with all reasonable inferences construed in favor of Mr. Love. The record evidence construed in favor of Mr. Love reflects that Mr. Love was asked to

resign or be terminated by Mr. Fogelman due to Mr. Love's failure to report the potential conflict of interest that an employee in his department, Ms. Smith, had with the County (Dkt. No. 20, ¶¶ 11–12).  Mr. Love does not provide any evidence indicating that his alleged constructive discharge was linked to the complaint he lodged against Ms. Scifres in 2021.  Even if the County asked Mr. Love to resign or be terminated at the time Mr. Love submitted his resignation, Mr. Love has come forward with no record evidence from which a reasonable juror could conclude that Mr. Love's protected conduct that occurred two years prior to his resignation was the but-for cause of the alleged adverse employment action.  *See Blomker v. Jewell*, 831 F.3d 1051, 1060 (8th Cir. 2016) (finding that reasons for firing an employee unrelated to the employee's protected conduct indicate that the protected conduct was not the but-for cause for the alleged adverse employment action).  Therefore, the Court finds that Mr. Love fails to establish a *prima facie* case of retaliation and that Pulaski County is entitled to summary judgment in its favor on Mr. Love's retaliation claim.

### 2.    Legitimate Nondiscriminatory Reason For Resignation And Failure To Establish Pretext

For the reasons discussed above, the Court finds that, even if Mr. Love has made out a *prima facie* case of retaliation, he has failed to create an issue of triable fact as to whether Pulaski County's alleged legitimate, nondiscriminatory reason for Mr. Love's resignation was pretext for retaliation.  The Court thus grants summary judgment to Pulaski County on Mr. Love's retaliation claim.

### C.    Pay Disparity Claim

Mr. Love brings a pay disparity claim against Pulaski County alleging that Mr. Love "has been consistently passed over for raises despite the fact that his workload is greater than similarly situated white directors, and that the plaintiff has consistently received above average performance ratings." (Dkt. No. 1, ¶¶ 93–96).  The Court construes Mr. Love's complaint to bring a pay

disparity claim under both Title VII and 42 U.S.C. § 1981 (*See id.*).  Therefore, the Court addresses each pay disparity claim in turn.

### 1.      Title VII Pay Disparity Claim

In his complaint, Mr. Love claims that "[w]hite counterparts of the plaintiff have consistently made more money than the plaintiff, and he like other African Americans are consistently paid less than their white counterparts in violation of Title VII of the Civil Rights Act of 1964 (as amended)." (Dkt. No. 1, ¶ 95).  Pulaski County claims that Mr. Love did not present his pay disparity claim to the EEOC, it is time barred, and therefore, it should be dismissed (Dkt. No. 11, at 22).  In response, Mr. Love asserts that his pay disparity claim is brought pursuant to 42 U.S.C. § 1981 (Dkt. No. 22, at 1).  However, the Court construes Mr. Love's complaint to bring a pay disparity claim under Title VII as well.  Mr. Love's EEOC charge does not allege a pay disparity claim, nor can such a claim be encompassed by anything that Mr. Love did raise in the EEOC charge.  *See Walker-Swinton v. Philander Smith Coll.*, 62 F.4th 435, 440 (8th Cir. 2023) (affirming summary judgment on pay disparity claim because plaintiff failed to exhaust the claim by raising it in the EEOC Charge).  Therefore, on the record before it, the Court grants Pulaski County's motion for summary judgment with respect to Mr. Love's Title VII pay disparity claim.[6]

### 2.      Section 1981 Pay Disparity Claim

Mr. Love also brings a pay disparity claim under 42 U.S.C. § 1981 alleging that he was passed over for raises and paid less than his white counterparts (Dkt. No. 1, ¶¶ 93–96).  Pulaski County maintains that Mr. Love fails to establish a *prima facie* case of pay discrimination because

---

[6] Pulaski County further argues that Mr. Love's Title VII pay disparity claim is time barred (Dkt. Nos. 11, at 22–23; 23, at 16).  Because the Court finds that Mr. Love's Title VII pay disparity claim fails for other reasons stated here, the Court declines to address the timeliness of Mr. Love's Title VII pay disparity claim.

he fails to establish that he was similarly situated to other employees who were treated differently (Dkt. No. 23, at 16).

To establish "a *prima facie* case in the specific context of a § 1981 disparate treatment claim based on allegedly discriminatory pay differentials" a plaintiff must establish "(1) that []he is a member of a protected class; (2) that []he was meeting her employer's legitimate job expectations; (3) that []he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently." *Smith v. URS Corp.*, 803 F.3d 964, 969 (8th Cir. 2015) (citing *Fields*, 520 F.3d at 864; *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). "The plaintiff's burden at the *prima facie* stage is not great; the plaintiff is required to present facts capable of supporting an inference of discrimination. *Smith*, 803 F.3d at 969–70 (citing *Torgerson*, 643 F.3d at 1047). An inference of discrimination can be supported by pointing to similarly situated employees; however, the similarly situated employees "must be 'similarly situated in all material respects.'" *Id.*, at 970 (citing *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 717 (8th Cir. 2012)).

Mr. Love fails to meet his burden of presenting facts supporting an inference of discrimination. In support of his pay disparity claim, Mr. Love provides the Court with a chart detailing the position, date of hire, pay, and race of 12 County employees (Dkt. No. 21, at 41). Mr. Love further claims that "[t]he average pay for a white director in Pulaski County Government is $117,099.87, whereas the average pay for a black director is $84,625.07, which is a difference of $32,474.48. Enough said." (*Id.*). However, Mr. Love does not assert how the comparators he identifies with respect to the pay disparity claim are similarly situated to Mr. Love (*See id.*).[7] That

---

[7] In his argument pertaining to his Title VII race discrimination claim, Mr. Love did assert why he believes he is similarly situated to Mr. Hutchens, Mr. Fogleman, and Ms. Scifres (Dkt. No. 21, at 23–31). For the reasons discussed previously, Mr. Love fails to meet his burden to establish

the white employees were paid more is not dispositive; Mr. Love still bears the burden to establish that the identified comparators are similarly situated to Mr. Love. *See Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 718–19 (8th Cir. 2000) (affirming summary judgment for the employer even though the evidence showed that the alleged comparator received more pay because the employee "did not show she and [the alleged comparator] had similar responsibilities, seniority, or background.").[8]

### D.    Arkansas Whistle Blower Act Claim

In the light of the Court's ruling on Mr. Love's federal claims, the Court declines to exercise supplemental jurisdiction over his state law AWBA claim. For these reasons, Mr. Love's AWBA claim is dismissed without prejudice.

## IV.    Conclusion

For these reasons, the Court grants Pulaski County's motion for summary judgment on Mr. Love's federal race discrimination, retaliation, and pay disparity claims (Dkt. No. 10). The Court declines to exercise supplemental jurisdiction over Mr. Love's state law AWBA claim. After construing the underlying facts and the inferences to be drawn from them in the light most favorable to the non-moving party, Mr. Love, the Court concludes that Mr. Love has failed to present evidence from which a jury might return a verdict in his favor on his race discrimination,

---

that he was similarly situated to these three identified comparators in relation to his 42 U.S.C. § 1981 pay disparity claim, as well.

[8] The Court recognizes that *Buettner* is a Title VII case in which the Eighth Circuit applied the standard from the Equal Pay Act, 29 U.S.C. § 206(d). *See Buettner*, 216 F.3d at 718–19 (citing *McKee v. Bi–State Dev. Agency*, 801 F.2d 1014, 1018 (8th Cir. 1986)). However, the same standard applies to race-based discrimination claims. *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 989 (8th Cir. 2003).

retaliation, and pay disparity claims.  The Court denies as moot the pending motions (Dkt. Nos.

27; 29; 31).

It is so ordered this 9th day of June, 2025.

Kristine G. Baker
Chief United States District Judge